**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CURTIS S. CRUMBLEY,

     Petitioner,

-vs-                                   Case No.  8:04-CV-427-T-30MAP

JAMES V. CROSBY, JR., et al,

     Respondents.

_____/

## <u>ORDER</u>

     Petitioner, a State of Florida inmate represented by counsel, initiated this cause of action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his 1999 conviction entered by the Sixth Judicial Circuit Court, Pinellas County, Florida (Dkt. 1). On October 27, 2004, Petitioner filed an Amended Petition for Writ of Habeas Corpus that supersedes[1] all previously filed petitions (Dkt. 21).  Respondent has filed a response to the petition (Dkt. 22), and Petitioner has filed a reply thereto (Dkts. 31; 37).  The matter is now before the Court for consideration on the merits of the petition. An evidentiary hearing is not required for the disposition of this matter. Rules Governing Section § 2254 Cases 8(a).

### Background

     Petitioner was charged by Information on April 8, 1999, with aggravated battery of a pregnant victim  (Dkt. 25, Ex. 00 1 at R. 9).  With the public defender serving as standby counsel, Petitioner proceeded to a trial by jury on September 28, 1999.

---

[1]*See, e.g., Fritz v. Standard Life Ins. Co.*, 676 F.2d 1356, 1358 (11th Cir. 1982) (finding that an amended complaint under the federal rules supercedes the original complaint).

The jury returned a verdict of guilty as charged, *see id.* at R. 29. Having been adjudicated a prison releasee reoffender, Petitioner was sentenced on October 13, 1999, to serve a term of 15 years.[2] *Id.* at R. 10; 34; 43; 47-48.

Represented by court-appointed counsel, Petitioner pursued a direct appeal asserting eight claims of trial court error.   Petitioner's conviction and sentence were affirmed  in a per curiam order, entered without written opinion, on December 13, 2000. *See Crumbley v. State*, 783 So.2d 257 (table decision).

On May 9, 2001, Petitioner filed an application for state post-conviction relief pursuant to Fla. R. Criminal. P. 3.850 asserting six claims of ineffective assistance of counsel and twelve claims of trial court error (Dkt. 25, Ex. 005). The trial court summarily denied Petitioner's Rule 3.850 motion on August 14, 2002. *See* Dkt. 25, Ex. 006.  The state district court affirmed the trial court's decision on February 21, 2003. *See Crumbley v. State*, 845 So.2d 194 (Fla. 2d DCA 2003) (table decision).

On May 24, 2002, while his Rule 3.850 motion was pending, Petitioner filed a petition for habeas relief  in the state district court asserting that appellate counsel failed to provide effective assistance of counsel.   Respondent has advised this Court that a copy of Petitioner's state habeas petition is not available due to circumstances beyond the State's control.  According to Respondent, Petitioner failed to serve the State a copy of his petition, and the state district court has indicated that the file containing Petitioner's petition was destroyed due to asbestos contamination. Consequently, Respondent accepts Petitioner's

---

[2]Florida's Prison Releasee Reoffender Punishment Act ("PRRPA") provides that defendants who commit certain enumerated crimes within three years of being released from a state prison are subject to enhanced sentences. *See* Fla. Stat. § 785.082 (1997). In 1989, Petitioner was charged with sexual battery of a victim under the age of twelve (Dkt. 25, Ex. 002 at R. 106).  He entered a guilty plea to the lesser charge of committing a lewd and lascivious act in the presence of a child under sixteen years of age on March 8, 1989, and was sentenced to serve a term of twelve years. *Id.* at R. 44. Petitioner was placed in the custody of the Florida Department of Corrections, where he remained until his release on October 5, 1998.  *Id.* at R. 34. The offense of conviction in the instant case occurred on   March 23, 1999.  *Id.* at R. 1.

statements, *see* Dkt. 21 at 76; 79, that he raised the following claims in the state habeas petition:

1.  [A]ppellate counsel was ineffective by denying Petitioner his Sixth Amendment rights under the confrontation clause, and due process of law, by failing to raise on direct appeal an argument based on sufficiency of the evidence because of the victim's failure to appear and testify at trial; and

2.  Appellate counsel was ineffective for not arguing legal sufficiency of circumstantial evidence to convict.

*Id.* The state district court denied Petitioner's request for state habeas relief on June 28, 2002. *See Crumbley v. State*, 823 So.2d 774 (Fla. 2d DCA 2002) (table decision).

Not deterred, Petitioner filed a petition for state habeas relief in the trial court on July 14, 2003, asserting that the trial court lacked jurisdiction to try him. The trial court summarily denied relief on July 22, 2003 (Dkt. 25, Ex. 009), and the state district court affirmed the trial court's decision on February 4, 2004. *See Crumbley v. State*, 873 So.2d 330 (Fla. 2d DCA 2004) (table decision).

Petitioner filed a timely petition for federal habeas relief, which he has amended twice (Dkts. 1; 13; 21). This matter is proceeding on the second amended complaint (Dkt. 21). Petitioner presents 28 grounds for relief in his petition.  Respondent acknowledges that the petition is timely but argues that Petitioner has failed to make the showing necessary for relief under 28 U.S.C. §§ 2254(d)-(e) (Dkt. 22 at 12).  Having reviewed the record, the parties arguments, applicable statutes, and controlling case law, for reasons set forth below, this Court agrees with Respondent.

### Standard of Review

Pursuant to 28 U.S.C. § 2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in

custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims. *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented  in the State court proceeding.

28 U.S.C. § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003). Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec. of Dept. of Corrs.*, 278 F.3d 1245, 1255  (11th Cir. 2002). Finally, a state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### Discussion

Since Petitioner's conviction was entered after AEDPA was enacted, his petition is subject to the provisions thereof. Where a state court initially considered the issues raised in the petition and entered a decision on the merits, § 2254(d) governs the review of Petitioner's claim. *See Mobley v. Head,* 267 F.3d 1312, 1316 (11th Cir. 2001).

**Trial Court Error**

**<u>Grounds One and Two</u>**

In Ground One, Petitioner contends that the trial court erred by failing to hold an adequate *Nelson* hearing[3] when he moved *pro se* to replace trial counsel. Petitioner asserts in Ground Two of his petition that the trial court erred by failing to conduct an adequate *Faretta* hearing before allowing him to proceed *pro se*.[4] These claims were raised and rejected on direct appeal. Although the claims were rejected without written opinion, for a state court's resolution of a claim to be an adjudication on the merits so that the determination will be entitled to deference for purposes of federal habeas review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. *See Wright, supra*, at 1255. The two claims are consolidated for purposes of the Court's review.

Under both Florida and federal law, when Petitioner requested that counsel be appointed to represent him in the criminal proceedings, he waived his right to self-representation. *See United States v. Teague,* 953 F.2d 1525, 1538 (11th Cir. 1992) (Birch, J., concurring) (finding that "[t]he right to self-representation entails a waiver of the right to counsel, since a defendant obviously cannot enjoy both rights at trial.") (citation omitted);

---

[3]*Nelson v. State*, 274 So. 2d 256, 258-59 (Fla. Dist. Ct. App. 1973) (holding that where a defendant, before commencement of the trial, requests discharge of his court-appointed counsel, the trial judge should make an inquiry of the defendant as to the reason for the request and, "[i]f incompetency of counsel is assigned by the defendant as the reason, or a reason, the trial judge should make a sufficient inquiry of the defendant and his appointed counsel to determine whether or not there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant . . . but if no reasonable basis for such belief appears, trial judge should so state on record and advise defendant that if he discharges his original counsel the State may not thereafter be required to appoint a substitute."). *See also United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973). Fifth Circuit decisions handed down prior to October 1, 1981, are binding precedent upon this Court. *See Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[4]*See Faretta v. California*, 422 U.S. 806 (1975) (A defendant has a constitutional right to defend himself if his waiver of right to counsel is knowing and intelligent).

*United States v. Dollar,* 93 F.Supp.2d 1234, 1236 (M.D. Fla. 2000) (holding that "the right to counsel and the right to self-representation are 'mutually exclusive.' Thus, where the right to self-representation is invoked, the right to counsel is necessarily waived.") (citation omitted); *Salser v. State*, 582 So.2d 12, 14 (Fla. 5th DCA 1991).

During a pretrial hearing held on May 14,1999, Petitioner made an oral motion for "counsel to be withdrawn from [his] case" because he felt that he was "not being represented to the utmost" (Dkt. 25, Ex. 002 at Tr. 76-77). When the trial court asked Petitioner if he was requesting leave to represent himself, Petitioner stated that he wanted another public defender appointed to represent him. The trial court advised Petitioner that whether he was entitled to appointment of replacement counsel would depend on the facts underlying his request and that the pretrial hearing convened to select the trial date was "not the time or place for . . . oral motions considering [his] attorney." His oral motion was denied.

Shortly thereafter, Petitioner filed a written "Motion to Request to Withdraw Public Defender . . . for Improper Representation" (Dkt. 25, Ex. 001 at R. 12-14). Asserting *inter alia*, that trial counsel was ineffective in failing to file a motion for a speedy trial; failing to discuss possible defenses with Petitioner; refusing to depose Petitioner; and advising Petitioner that he should not testify, Petitioner concluded his litany of complaints by arguing that trial counsel should be removed for "unprofessional conduct" and new counsel appointed (Dkt. 25, Ex. 001 at R. 12-13). During a hearing held on his *pro se* motion, Petitioner complained that trial counsel refused to voluntarily withdraw from representing him, refused to advise him regarding when depositions were scheduled, and rejected his request to testify at trial. Petitioner further complained that trial counsel refused to provide

him a copy of the investigator's report concerning his allegation that the three witnesses scheduled to testify against him had criminal records.

After hearing Petitioner's complaints and trial counsel's responses, the trial court concluded that "[t]here's nothing before the Court that suggests that [trial counsel] was not able to meet the standards necessary and is meeting the standards necessary of an attorney in his representation of [Petitioner]." *See* Dkt. 25, Ex. 002 at R. 81-85. *See Morris v. Slappy*, 461 U.S. 1 (1983) (indigent criminal defendant has an absolute right to be represented by counsel, but not a right to have a particular lawyer represent him); *United States v. Durham*, 172 Fed. Appx. 261, 266 (11th Cir. 2006). A defendant's general loss of confidence or trust in his counsel, standing alone, is insufficient to justify substitution. *See Thomas v. Wainwright*, 767 F.2d 738, 742 (11th Cir. 1985).

The trial court advised Petitioner that he had three choices: he could proceed *pro se*, which the trial court cautioned would be foolish given his "lack of legal training"; he could hire a lawyer to represent him if he had the financial resources to do so; or he could go forward with trial counsel representing him. *Id.* at R. 85. Petitioner acknowledged that he did not "have the knowledge of law" necessary to represent himself, but remained adamant that trial counsel be discharged and new counsel appointed. *Id.* at R. 86.  At the conclusion of the proceedings, Petitioner stated: "Okay. Sir, I will proceed at trial and I'll just deal with [trial counsel]." *Id.* at R. 87.

Having reviewed the record, the Court concludes that the trial court acted properly in denying Petitioner's request for appointment of new counsel because, as Respondent correctly notes, Petitioner's complaints about his trial attorney amounted to nothing more than a dispute between lawyer and client regarding how Petitioner's case was to be defended. Complaints of this sort are insufficient to justify appointment of new counsel,

which is what Petitioner repeatedly asked the trial court to do each time he requested that trial counsel be discharged. *Johnson v. State*, 560 So. 2d 1239 (Fla. 1st DCA 1990).

After Petitioner's motion for replacement counsel was denied, he filed a *pro se* motion to participate as co-counsel during the trial (Dkt. 25, Ex. 002 at R. 98).  The motion was discussed briefly at a pretrial conference on November 1, 1999, and a hearing on the motion was scheduled to occur on the morning of trial.  *Id.*  It appears that Petitioner was subsequently granted leave to serve as co-counsel with the stipulation that the public defender, as the only attorney in the case, speak on Petitioner's behalf. *Id.* at R. 108.

When the case was called for trial on September 9, 1999, the State's witnesses failed to appear.  At that time, Petitioner asked to address the trial court in opposition to the State's request for a continuance.  Trial counsel opposed Petitioner's request. Noting that under its previous ruling on Petitioner's request to appear as co-counsel, only trial counsel was allowed to address the trial court, the trial court informed Petitioner that before he would be allowed to address the court, it would first have to determine whether he wanted to continue with trial counsel as his attorney.  Petitioner informed the trial court that he did not want trial counsel to represent him.  The trial court advised Petitioner that it would entertain his opposition to proceeding with trial counsel representing him, but again cautioned him that new counsel would be appointed only if Petitioner established that trial counsel was not effectively representing him.  Petitioner was advised that if he did not meet that burden, new counsel would not be appointed.

The crux of his complaints was Petitioner's belief that "[trial counsel] was trying to conspire with the State to send [Petitioner] to prison when they [did not] have a case against [him]." *Id.* at R. 115. After voicing several complaints of this nature, Petitioner acknowledged that he had been given an opportunity to discuss his theory of the case with

trial counsel and they did not agree on the best way to proceed. The trial court found that Petitioner again failed to demonstrate a basis for discharging trial counsel for cause and advised Petitioner that if he decided to discharge trial counsel, new counsel would not be appointed to represent him. *Id.* at 125. Petitioner decided to delay his decision until the day of the trial. *Id.*

When the trial commenced, Petitioner advised the trial court that he had decided to represent himself (Dkt. 25, Ex. 002, Vol. I at Tr. 4). The trial court queried Petitioner regarding his age, health, and education; his knowledge of the nature of the charges and possible defenses and penalties; his understanding of the rules of evidence, procedure, and courtroom decorum; his experience in criminal trials; and whether anyone had attempted to influence him to represent himself. *Id. See United States v. Kimball*, 291 F.3d 726, 731 (11th Cir. 2002). Having conducted a thorough *Faretta* colloquy, the trial court concluded that Petitioner was competent to waive counsel and represent himself, finding that Petitioner's "waiver of counsel and his request to represent himself are knowing and intelligent." *Id. at 15.* Trial counsel was directed to serve as standby counsel. Petitioner was cautioned that trial counsel was simply standby counsel and placed on notice that he was "solely responsible for the organization and content of presenting his case. . . . [with] the entire responsibility for [his] own defense." *Id.* at 14.

While "[t]he Sixth and Fourteenth Amendments of [the] Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment," the Sixth Amendment also affords criminal defendants the right to defend themselves if they so desire. *Faretta v. California*, 422 U.S. at 807. "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose

self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* at 835 (internal quotations and citation omitted). Where, as here, the trial record shows that the petitioner knowingly and voluntarily elected to represent himself, the *Faretta* standard is satisfied. *See Nelson v. Alabama,* 292 F.3d 1291, 1295 (11th Cir. 2002).

Petitioner has not shown that the state court's rejection of these claims is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," as required by Section 2254(d).

**Grounds Three, Seventeen, Nineteen, Twenty-One, and Twenty-Two**

In Ground Three, Petitioner contends that the trial court erred in denying a motion in limine seeking to exclude as inadmissible lay witness opinion testimony that the victim was pregnant when the battery occurred.[5] In Ground Seventeen, Petitioner asserts that "[t]he trial judge improperly allowed the 911 tape to be admitted into evidence."[6] Petitioner contends in Ground Nineteen that "[t]he trial court erred by allowing conflicting evidence regarding whether or not the victim was pregnant to be presented at trial." In Ground Twenty-One, Petitioner alleges that "[t]he trial court improperly permitted the State to present perjured testimony regarding whether or not Betty Smith had been convicted of a felony."[7] Finally, in Ground Twenty-Two, Petitioner argues that "[t]he trial court improperly

---

[5]The State's case was complicated by the fact that the victim elected not to appear at trial. To establish its case, the State presented the testimony of Elizabeth Smith and Betty Smith, witnesses to the battering, both of whom testified that the victim was pregnant. *See* Dkt. 25, Ex. 002, Vol. II at 98; 143.

[6]Petitioner stipulated to the authenticity of the tape recording and moved it into evidence during his case in chief (Dkt. 25, Ex. 002, Vol. II at Tr. 158-61).

[7]The only reference made during the trial to Betty Smith's criminal history was by Petitioner when he asked her on cross-examination if she had "ever been arrested." The question went unanswered when the
(continued...)

permitted the State to present perjured testimony from witnesses Betty Smith and Elizabeth Smith regarding whether or not Petitioner left a mark on his victim's face."[8] While these claims were raised in state court,[9] they will not be addressed in these proceedings because each of the claims raises a state evidentiary issue, which is beyond the scope of these proceedings.

On habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Federal courts possess only limited authority to consider state evidentiary rulings in habeas corpus proceedings. *Burgett v. Texas*, 389 U.S. 109, 113-114 (1967).   Even when a petition that actually involves state law issues is "couched in terms of equal protection and due process," this limitation on federal habeas corpus review is of equal force. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1196-98 (5th Cir. 1976)). Absent a constitutional violation, the Florida Supreme Court is the final arbiter of Florida evidentiary law. *See Mills v. Singletary,* 161 F.3d 1273, 1289 (11th Cir. 1998), *cert. denied*, 528 U.S. 1082 (2000); *Hunt v. Tucker*, 93 F.3d 735, 737 (11th Cir. 1996) (per curiam); *Baxter v. Thomas,* 45 F.3d 1501, 1509 (11th Cir.), *cert. denied,* 516 U.S. 946 (1995).  Petitioner has not demonstrated that the trial court's evidentiary rulings violated his federal constitutional rights. Thus, these claims will not be addressed.

---

[7](...continued)
trial court sustained the prosecutor's objection to the line of questioning (Dkt. 25, Ex. 002, Vol. II at Tr. 145).

[8]Petitioner argues that this testimony was contradicted by the investigating officer's statement in the police report that the victim "had no visible signs of injuries where she was slapped and she also declined to be seen by rescue" and the fact that he was not assessed victim injury points (Dkt. 31 at 52-53). This is not a case where the version of facts given to police is vastly different from trial testimony. Here, each  witness testified regarding her personal observations of the victim.

[9]Ground Three was raised on direct appeal; Grounds Seventeen, Nineteen, Twenty-One, and Twenty-Two were raised in Petitioner's Rule 3.850 motion as Grounds Six, Eight, Nine, and Ten, respectively.

**Ground Four**

In Ground Four, Petitioner asserts that the trial court erred by sentencing him as a prison releasee reoffender because the law under which he was sentenced is unconstitutional. Specifically, Petitioner contends that the PRRPA violates the separation of powers clause of the Florida and United States Constitutions. This claim was raised and rejected on direct appeal.

The separation of powers clause of the United States Constitution is not applicable to the States. *See Whalen v. United States*, 445 U.S. 684, 690 n. 4 (1980) (citing *Dreyer v. Illinois*, 187 U.S. 71, 84 (1902) ("Whether the legislative, executive, and judicial powers of a state shall be kept altogether distinct and separate, or whether persons or collections of persons belonging to one department may, in respect to some matters, exert powers which, strictly speaking, pertain to another department of government, is for the determination of the state.")); *McKnight v. State*, 727 So.2d 314, 318 n.3 (Fla. 3d DCA 1999).

Although the federal separation of powers doctrine is not binding on the states, separation of powers is a fundamental part of the structure of Florida government. *See* Fla. Const. art. II, § 3. Petitioner's assertion that the PRRPA violates the separation of powers clause of the Florida Constitution is foreclosed by the Florida Supreme Court's decision in *State v. Cotton*, 769 So.2d 345 (Fla. 2000) (noting that it had traditionally applied a strict separation of powers doctrine in construing the Florida Constitution, the Florida Supreme Court held that the PRRPA "is not unconstitutional on its face as violative of separation of powers principles."). Petitioner has not otherwise shown that the State violated his right to fundamental fairness at trial or sentencing.

> A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved. *Bronstein v. Wainwright*, 646 F.2d 1048, 1050 (5th Cir. Unit B June 1981). State courts are the ultimate expositors of their own state's laws, and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of the state except in extreme cases. *Mendiola v. Estelle*, 635 F.2d 487, 489 (5th Cir. Unit A 1981).

*McCullough v. Singletary*, 967 F.2d 530, 535-36 (11th Cir. 1992), *cert. denied*, 507 U.S. 975 (1993).

As to Petitioner's contention that sentencing under the PRRPA constitutes being "sentenced twice," in violation of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights, he provides no factual support for this argument and none was presented in the appellate brief to which Petitioner directs this Court's attention (Dkt. 31 at 25). Devoid of any factual support, this allegation is insufficient to obtain relief under § 2254. *See Caderno v. United States,* 256 F.3d 1213, 1217 (11th Cir. 2001) (noting that habeas relief is not warranted when claims are merely conclusory allegations unsupported by specifics); *Tejada v. Dugger,* 941 F.2d 1551, 1559 (11th Cir.1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim).

Since Petitioner fails to state a ground for relief that is cognizable under § 2254, this claim is subject to dismissal.

**Grounds Five, Six, Seven, Eight, and Nine**

Because these five grounds suffer from the same infirmity, they will be discussed together. Petitioner asserts that the trial court erred in allowing the State to proffer "unfairly prejudicial questions" during voir dire (Ground Five); failing to allow impeachment of a State witness with a felony conviction where adjudication had been withheld (Ground Six);

prohibiting the defense from impeaching a State witness through the use of statements in a police report (Ground Seven); failing to give a special jury instruction advising the jurors that if convicted, he would be sentenced to serve a mandatory 15-year term under the PRRPA (Ground Eight); and failing to renew its offer of appointment of counsel, "requiring Petitioner to defend himself *pro se* at subsequent stages of the trial" (Ground Nine) (Dkt. 25, Ex. 003 at 7-9). Grounds Five, Six, Seven, and Eight were raised in Petitioner's initial brief on direct appeal. *See Crumbley v. State*, 783 So.2d 257 (table decision). Respondent contends that Ground Nine was not raised in the state court. Petitioner asserts, to the contrary, that Ground Nine was raised in a supplemental brief filed on direct appeal on August 4, 2000 (*See* Dkt. 31 at 31).

Having reviewed Petitioner's appellate brief, the Court concludes that Petitioner has failed to exhaust the federal dimension of the claims presented in Grounds Five, Six, Seven, and Eight.  Federal habeas courts require that a petitioner present his claims to the trial court "such that a reasonable reader would understand each claim's particular legal basis and specific *factual* foundation." *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (citation omitted; emphasis added). The exhaustion of the federal dimension of a habeas claim is a statutory requirement that cannot be waived by this Court. See 28 U.S.C. 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838,  842 (1999); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

While Petitioner states in Ground Five of his appellate brief that he was denied his "due process right to a fair [sic] by an impartial jury," the only case cited in support of this

allegation is *Zamora v. State*, 361 So.2d 776, 780 (Fla. 3d DCA 1978) (rejecting defendant's assertion that the trial judge erred during voir dire in precluding defense counsel from inquiring into the potential jurors' views on television and their viewing habits, as well as their attitude toward the defense of "involuntary subliminal television intoxication"). Petitioner did not cite any federal case or state case that relied on federal grounds in support of these claims in his appellate brief, nor did he refer to the United States Constitution. *See Baldwin v. Reese,* 541 U.S. 27, 32 (2004). "[T]o exhaust state remedies, petitioners must . . . articulate the constitutional theory serving as the basis for relief." *Henry v. Dep't. of Corrs.,* 197 F.3d 1361, 1366 (11th Cir. 1999) (quoting *Gray v. Netherland,* 518 U.S. 152 (1996)); *Zeigler v. Crosby,* 345 F.3d 1300, 1307 (11th Cir. 2003), *cert. denied,* 543 U.S. 842 (2004).

As the *Duncan* court held, clearly and unambiguously, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, *he must say so*, not only in federal court, but *in state court*." *Duncan v. Henry*, 513 U.S. at 365-66 (emphasis added). *See also McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (citations omitted) ("[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record." (citation omitted)).

Respondent did not expressly waive this issue, and nothing in the record suggests that the statutory exceptions to the exhaustion requirement are applicable in the present case. *See* 28 U.S.C. § 2254(b)(1)(B).  The failure to properly exhaust state court remedies for Grounds Five, Six, Seven, and Eight when remedies were available results in a procedural default of these claims. *O'Sullivan*, 526 U.S. at 847. Under the rules governing post-conviction relief in Florida courts, Petitioner's claims are procedurally defaulted

because any new petition would be barred by multiple procedural rules, including the statute of limitations. *See* Fla. R. Criminal. P. 3.850.

As state remedies are no longer available, Petitioner must show either "cause and prejudice" or "manifest injustice" to overcome this procedural default. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). Petitioner offers no reason for his failure to raise the federal dimension of these claims in the state courts and the Court discerns none that would amount to good cause to overcome his default. Further, there is nothing in the record that suggests a miscarriage of justice will occur if the Court does not reach the merits of these claims. *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). Because Petitioner fails to proffer "specific facts which support a finding that one of the exceptions to the procedural default rule exists," *Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996), it would be improper for this Court to address the merits of Grounds Five, Six, Seven, and Eight. *See Kight v. Singletary*, 50 F.3d 1539, 1541 (11th Cir. 1995).

As to Ground Nine, assuming, without deciding, that Petitioner did exhaust this claim on direct appeal, Petitioner's assertion that the trial court erred in not renewing its offer of assistance of counsel at every stage of the trial is, as Respondent argues, clearly rebutted by the record. Petitioner agreed to proceed with the assistance of standby counsel if the trial court allowed him to present his own case.  Twice during the State's case-in-chief, the trial court offered to reappoint standby counsel to represent Petitioner -- offers Petitioner rejected. *See* Dkt. 25, Ex. 002, Vol. II at Tr. 108; 133. When the state rested its case, the trial court asked Petitioner if he wished to continue to represent himself, and he responded in the affirmative. *Id.* at Tr. 160. Prior to closing argument, the trial court again asked Petitioner if he "wish[ed] [trial counsel] to take over the representation of the case." *Id.* at Tr. 171. Petitioner responded, "I make the closing argument[,] and he can handle it from

there." *Id.* Standby counsel was available to consult with Petitioner throughout the trial, and in fact, assisted Petitioner, on the record, during voir dire, *see* Dkt. 25, Ex. 002, Vol. I at Tr. 70-75, during trial when Petitioner moved to introduce the tape recording of the victim's 911 call, *see* Dkt. 25, Ex. 002, Vol. II at Tr. 158-60, during the charge conference, *id.* at Tr. 167-70, and in preparing for closing argument, *id.* at Tr. 170. Finally, as Petitioner acknowledges in his § 2254 petition, standby counsel represented Petitioner at sentencing. Rebutted by the record, Ground Nine lacks merit.

**Ground Sixteen and Eighteen**

In Ground Sixteen, Petitioner contends that the "trial court was in error by allowing the State Attorney Officer to not prove all the elements of the case to convict by sufficient evidence" (Dkt. 21 at 45). In his reply, Petitioner narrows the scope of his claim, contending that the State failed to adduce evidence that established that the victim was pregnant when the altercation occurred (Dkt. 31 at 40). This claim was raised as Ground Eight in Petitioner's Rule 3.850 motion.

Raised as Ground Seven in the Rule 3.850 motion, *see* Dkt. 25, Ex. 5 at 7, Petitioner contends in Ground Eighteen, that the trial court erred in allowing his conviction "by use of evidence against [Petitioner] pursuant to an unlawful arrest" (Dkt. 21 at 50). Specifically, Petitioner asserts that he was convicted based on a police report "containing false information."

When these issues were raised in the Rule 3.850 proceedings, the trial court concluded that Petitioner was challenging the sufficiency of the evidence to support his conviction, claims that could or should have been raised on direct appeal rather than in a Rule 3.850 motion. *See* Fla. R. Criminal. P. 3.850(c).

The Eleventh Circuit has held that where a claim has been exhausted in state court and is procedurally barred because Petitioner failed to raise it during trial or on appeal, these issues are procedurally defaulted in a federal habeas court unless Petitioner shows cause or prejudice excusing the default or that he is "actually innocent." *See Chandler v. Moore*, 240 F.3d 907, 912 (11th Cir. 2001).  *See also Stewart v. LaGrand,* 526 U.S. 115 (1999)  (holding that where state court held petitioner's ineffective-assistance arguments were barred pursuant to a state procedural rule, Petitioner must demonstrate cause or prejudice).

Petitioner contends that these issues were not raised on direct appeal because they were not preserved at trial. To show cause for the procedural default, Petitioner must show that some objective factor external to the defense prevented him from raising his claims on direct appeal and that this factor cannot be fairly attributable to *Petitioner's own conduct. See Smith v. Jones,* 256 F.3d 1135, 1145 (11th Cir. 2001) (noting "that 'the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule' ") (quoting *Murray v. Carrier,* 477 U.S. at 488)). Since Petitioner represented himself at trial, the fault lies with him. Petitioner has not shown cause excusing the default or that he is entitled to the fundamental miscarriage of justice exception. Thus, the Court need not address these procedurally barred claims.

## Grounds Twenty, Twenty-Three, Twenty-Four, and Twenty-Five

In each of these claims, Petitioner asserts that the court reporter altered or falsified portions of the state court record.  In Ground Twenty, Petitioner makes the bald assertion that the court reporter fabricated portions of the record related to a motion to dismiss and the trial transcripts. In Ground Twenty-Three, Petitioner contends that the court reporter

altered the record on appeal by including questions and testimony that took place outside Petitioner's presence. Petitioner further asserts in Ground Twenty-Four that the trial court altered the record by omitting from the trial transcript his argument for a motion for judgment of acquittal allegedly made after the jury returned its guilty verdict. In Ground Twenty-Five, Petitioner contends that evidence that supported his claim that his conviction was the result of a "malicious prosecution" initiated by Betty and Elizabeth Smith because he refused to "produce" crack cocaine to support Betty Smith's cocaine habit was removed from the record on appeal. Petitioner asserts that the recording of the victim's call to the 911 operator supports his claim.[10] Petitioner further contends that the prosecutor and standby counsel "fixed false allegation into deposition" to insure his conviction.

Petitioner raised these claims as Ground Twelve in his Rule 3.850 motion. In rejecting the claims, the trial court found as follows:

> At Claim Twelve, Defendant contends that the court reporter fabricated portions of the Motion to Dismiss and Voir Dire Examination Transcript and the Trial Transcript. This claim is conclusory. He fails to attach any documentation or affidavits evidencing the facts of the claim. Without such, the claim is mere speculation and the Court will not grant an evidentiary hearing so that Defendant can conduct a fishing expedition. *See Davis v. State*, 736 So.2d 1156 (Fla. 1999). *[S]ee also Arbeleaez v. State*, 775 So.2d 909 (Fla. 2000). Nor has [sic] Defendant failed to show how he was prejudiced. Even if the pages were altered which the Court does not so find, all of the claims in the instant Motion were conclusively refuted by other parts of the record or facially insufficient. Therefore, this claim is denied.

Dkt. 25, Ex. 006 at 4. The trial court's rejection of Petitioner's claim is not objectively unreasonable.

---

[10]At Petitioner's request, the 911 tape  was played for the jury following his testimony. Acknowledging that the 911 tape was not transcribed in the record, Respondent has determined that the tape remains available for review. Because a transcript of the 911 tape is not critical to the disposition of issues raised in the petition, an expansion of the record is not necessary.

In his § 2254 petition, as in his Rule 3.850 motion, Petitioner's claims are based, at best, on tenuous speculation. To secure a hearing on his claims in federal court, a habeas petitioner must allege facts, which, if true, would entitle him to habeas relief. *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (en banc). Neither Florida nor federal law requires a habeas court to hear a claim based entirely on conclusory allegations wholly devoid of specifics. *Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir. 1994) (en banc); *Moore v. State*, 820 So.2d 199, 203 n. 4 (Fla. 2002).

The trial court's rejection of these claims as legally insufficient is objectively reasonable. The Court concludes, therefore, that Grounds Twenty, Twenty-Three, Twenty-Four, and Twenty-Five fail to meet the criteria for relief under § 2254(d).

**Ineffective Assistance of Counsel**

The remainder of Petitioner's claims are premised on the Sixth Amendment right to effective assistance of counsel. The six claims of ineffective assistance of trial counsel were raised in Petitioner's Rule 3.850 motion, and the two claims of ineffective assistance of appellate counsel were raised in Petitioner's first state habeas petition.

To establish a prima facie claim of ineffective assistance of counsel at trial, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "[T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)).

The *Strickland* standard of review also applies to ineffective assistance of appellate counsel claims.  *See Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992).  In *Jones v. Barnes*, 463 U.S. 745 (1983), the Supreme Court held that the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue.  The Court suggested, to the contrary, that effective advocates "winnow out" weaker arguments even though the weaker arguments may be meritorious.  *Id.* at 751-52.

While the state court did not cite the *Strickland* standard of review for an ineffective assistance of counsel claim*,* "a state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite [Supreme Court]  opinions. . . . [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell v. Esparaza*, 540 U.S. 12, 16 (2003) (quoting *Early v. Packer,* 537 U.S. 3, 7-8 (2002)).  Thus, to be entitled to relief under § 2254, Petitioner must establish that the state court's determination that his claims lack merit was objectively unreasonable under the *Strickland* standard or that the decision "was based on an unreasonable determination of the facts in light of the evidence presented." *See* 28 U.S.C. § 2254(d).  Whether a criminal defendant has received effective assistance of counsel is a mixed question of law and fact.  The underlying factual findings of the state courts are, however, presumptively correct unless rebutted by "clear and convincing evidence."  28 U.S.C. § 2254(e).

**Trial Counsel**

**Grounds Ten and Fifteen**

Grounds Ten and Fifteen, raised as Ground One in Petitioner's Rule 3.850 motion, relate to the impeachment of State's witness Betty Smith. Petitioner contends that trial counsel was ineffective in failing to properly advise the trial court that Betty Smith had a

prior felony conviction (Ground Ten) and "improperly advising Petitioner that a police report showing that Betty Smith was arrested for possession of cocaine could not be used as evidence" (Ground Fifteen).   In its order rejecting these claims, the trial court found as follows:

> In Claim One, Defendant contends that counsel was ineffective in stating to the Court during a pre-trial hearing that one of the witnesses did not have a criminal record for impeachment purposes when the witness was arrested for drug possession.  In support of his claim, Defendant attaches as exhibits a copy of a police report evidencing that the witness was arrested on such charge.
>
> Defendant's attachments only indicate that the witness was arrested, not that she was convicted.  In fact, Pinellas County records indicate that the witness received a withhold of adjudication in CRC 90-20152CFANO *[Exhibit D: Printout of Criminal Justice Information System's Docket Screen for CRC90-20152CFANO]*.  For purposes of impeachment, a withhold of adjudication is not a conviction. *See* § 90.610, Fla. Stat.; *See also State v. McFadden*, 772 So.2d 1209 (Fla. 2002).  Therefore, this claim is denied. . . .

Dkt. 25, Ex. 006 at 1-2. Betty Smith was arrested on December 18, 1990, and received a withholding of adjudication in Case No. CRC90-20152CFANO. Under Florida law, "[a] party may attack the credibility of any witness, including an accused, by evidence that the witness has been convicted of a crime . . . . " Fla. Stat. § 90.610(1).  An adjudication of guilt by the trial court is, however, required to impeach a witness with a prior "conviction" under Fla. Stat. § 90.610(1). *See State v. McFadden*, 772 So2.d 1209, 1216 (Fla. 2000) ("[I]t is the adjudication of guilt or the judgment of conviction that becomes essential to utilizing a prior crime as a 'conviction' to challenge a testifying witness's present credibility."). The record clearly supports the trial court's rejection of these claims.  It is axiomatic that trial counsel is not ineffective for providing accurate legal advice.

Petitioner has not demonstrated that the state court's rejection of this claim is contrary to or an unreasonable application of Supreme Court precedent.  The claim is, therefore, subject to denial.

**Ground Eleven**

Set out as Ground Eleven herein, this claim was raised as Ground Two in Petitioner's Rule 3.850 motion. Petitioner asserts that trial counsel was ineffective in withholding a report prepared by the Public Defender's internal investigator. According to Petitioner, he needed a copy of the interviewer's report to document that the arresting officer stated to him, "the only reason I am locking you up is I don't like nigger[s], and my boss man is a nigger." Dkt. 21 at 33.  In rejecting this claim, the trial court found as follows:

> In Claim Two, Defendant contends that counsel was ineffective for failing to provide Defendant with a free copy of an internal public defender investigative report.  The trial court addressed this claim of ineffective assistance of counsel. *[Exhibit E: Transcript of State's Motion for Continuance of Trial pp. 17 - 21]*. Although Defendant contends that the requested document is exculpatory, counsel explained the Office of the Public Defender's policy regarding providing free documents to clients. *[Exhibit E]*.  Therefore, this claim is denied.

Dkt. 25, Ex. 006 at 2.

At the time Petitioner was arrested, if the Hillsborough County Public Defender ("HCPD") was appointed to represent a defendant who was being held in custody, an investigator employed by the HCPD was sent to the jail to conduct an initial interview with the defendant (Dkt. 25, Ex. 002 at R. 120).  In his motion to have trial counsel removed from his case, Petitioner stated, verbatim:

> The Defendant, requested a copy of the Public Defender interview statement. That I furnished in between March 23, and March 29, 1999. To prove fabricating contradicting statements against the witness, and the Police Officer. The undersigned counsel inform me he left the Public Defendant's interview investigation statement in his office on the second floor.

Dkt. 25, Ex. 001 at R. 17. During the hearing on the motion for appointment of new counsel, trial counsel informed the trial court that he had provided Petitioner copies of all documents he felt were relevant to the trial. Trial counsel acknowledged that he did not provide Petitioner a copy of the investigator's report, but advised the trial court that Petitioner had been allowed to review the report (Dkt. 25, Ex. 002 at R. 119).  Petitioner does not contest trial counsel's statement that he was given an opportunity to review the investigator's report.

Petitioner offers no theory under which the investigator's report memorializing Petitioner's statements during his initial interview could be used to "prove fabricating contradicting statements against the witness [ ] and the Police Officer."   Even if Petitioner managed to circumvent Florida's hearsay rule, his statements could not be used to impeach the witnesses. Nor does Petitioner explain how the statement attributed to the arresting officer in the document was relevant to his defense that he was the victim of a "malicious prosecution" instigated by Betty and Elizabeth Smith.

Petitioner has not shown that trial counsel's refusal to provide him a free copy of the investigator' report was unreasonable under prevailing professional norms or that he was prejudiced because he did not have a copy of the document. Having failed to meet either prong of the *Strickland* test, Petitioner cannot prevail on this claim.

**Ground Twelve**

Next, Petitioner asserts that trial counsel was ineffective in advising him that the arresting officer's report was inadmissible as evidence because he was unavailable to testify (Dkt. 21 at 35-36). Raised as Ground Twelve herein, this claim was raised as Ground Three in Petitioner's Rule 3.850 motion. In its order rejecting this claim, the trial court found as follows:

In Claim Three, Defendant contends that standby counsel was ineffective in advising him that the police report was inadmissible as evidence since the police officer no longer worked at the station.  Defendant contends that the police report would show that Defendant did not know that the victim was pregnant.  Contrary to Defendant's allegation, the report does indicate that the victim was pregnant; however, the report does not indicate whether this was the police officer's observation and the witnesses' synopsis do not include any reference to the victim being or not being pregnant. *[See Defendant's Exhibit A, page 2]*. Therefore, the report could not be used to impeach the witnesses.  Further, the report is not admissible. *See* § 90.803(8), Fla. Stat.; *Bolin v. State*, 736 So.2d 1160, 1167 (Fla. 1999) (police reports are hearsay); *Rogers v. State*, 782 So.2d 363, 383, n.11 (Fla. 2001) (citing *Hendrieth v. State*, 483 So.2d 763 (Fla. 1st DCA 1986)).  Additionally, the former police officer who prepared the report was unable to testify. *[Exhibit F: Witness Subpoena]*.  Therefore, this claim is denied.

Dkt. 25, Ex. 006 at 2.  The record supports the trial court's rejection of this claim.

First, Petitioner has not overcome by clear and convincing evidence the presumption of correctness accorded the trial court's factual findings that the contents of the report did not support Petitioner's representation it was a tool for impeachment purposes because the officer failed to attribute the information to any particular witness. As the trial court  found, under Florida's evidentiary rules the officer's report was inadmissible hearsay.  *See* Fla. Stat. § 90.803(8) (1998); *Burgess v. State*, 831 So.2d 137, 140-41 (Fla. 2002). The only one who could testify from his personal knowledge regarding the on-scene investigation was the arresting officer who prepared the report, and he was unavailable for trial. Trial counsel correctly advised Petitioner that the police report was not admissible under Florida's rules of evidence.

The trial court's rejection of this claim is entirely consistent with the test for ineffective assistance of counsel claims enunciated in *Strickland*.

**Ground Thirteen**

In Ground Thirteen, raised as Ground Four in his Rule 3.850 motion, Petitioner asserts that the trial court erred by failing to hold a hearing regarding his assertion during

the September 9, 1999 hearing on the State's motion for a continuance that trial counsel "conspired" with the State Attorney to "set the Petitioner [UP] as false allegations alleging that the Petitioner's was tampering with a witness to obtain a continuance . . . because no one showed up." In his Rule 3.850 motion, Petitioner labeled this as an ineffective assistance of counsel claim. This claim fails whether it is construed as a claim of ineffective assistance of counsel or trial court error.

The trial court rejected this claim, finding:

> In Claim Four, Defendant alleges that counsel and the state colluded together at a hearing held on September 9, 1999. Specifically, he alleges that he saw the prosecutor and his defense attorney whispering and speculates that they were talking about Defendant's tampering with a witness. As Defendant's claim is conclusory, it is denied.

Dkt. 25, Ex. 6 at 3. The claim is, likewise, presented in the § 2254 petition in conclusory terms, based purely on speculation.

When the case was called, the prosecutor informed the trial court that the State's witnesses had not yet arrived. The case was passed. When it was recalled, the prosecutor provided the trial court with a summary of the background of the case. In explaining that the victim was not being cooperative in the prosecution of the case, the prosecutor disclosed that Elizabeth Smith stated during her deposition that Petitioner approached her and the victim on a bus and attempted to persuade them not to testify against him. The prosecutor advised the trial court that both eyewitnesses had been subpoenaed and each confirmed that she would be present to testify. The prosecutor had no explanation for their absence and asked that the trial be continued.

In opposition to the continuance, trial counsel likewise acknowledged that the victim was not cooperating in his investigation. Trial counsel informed the trial court that he had not yet been able to speak with the victim and urged the trial court to dismiss the case. After

hearing argument from Petitioner, trial counsel, and the prosecutor on, *inter alia*, the State's motion for a continuance and trial counsel's motion to dismiss, the trial court granted the State's motion. Trial counsel is not ineffective for failing to prevail on his argument in opposition to the motion for a continuance, *see Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000), *cert. denied*, 531 U.S. 1204 (2001). Further, given trial counsel's opposition to the continuance and his motion to dismiss the charges, Petitioner's allegations that trial counsel conspired with the prosecutor to prevent the dismissal of the case are clearly rebutted by the record.

Petitioner has not demonstrated that the trial court's rejection of this claim resulted in an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts in light of the evidence. Thus, Petitioner has failed to establish that he is entitled to federal habeas relief on this claim.

## Ground Fourteen

In Ground Fourteen of the petition, raised as such in his Rule 3.850 motion, Petitioner asserts that trial counsel was ineffective in failing to "more vigorously" defend against the State's decision to sentence him as a prison releasee reoffender. In rejecting the claim, the trial court found as follows:

> At Claim Fourteen, Defendant contends that his counsel at sentencing was ineffective in acknowledging that Defendant could be sentenced as a prison releasee reoffender. The State was fully aware of his status prior to trial. *[Exhibit G: Order, filed April 22, 1999]*. Nor has Defendant alleged that the status was erroneous. Further, at page 13 of his Memorandum, Defendant states that counsel wanted Defendant to receive the longest sentence possible. It would appear from the record that counsel was attempting to locate the victim (who did not testify at trial) to request a departure sentence from sentencing as a prison releasee reoffender. *[Exhibit H: Transcript of sentencing; Order, filed April 22, 1999]*; *[Exhibit I: Transcript of Post Trial Hearing]*. Therefore, this claim is denied.

Dkt. 25, Ex. 006 at 4.

Hoping to locate the victim and obtain a statement from her that she "would prefer [Petitioner] not get the PRR sentence," trial counsel moved for a continuance before sentencing (Dkt. 25, Ex. 002, Vol. II at Tr. 198). *See* Fla. Stat. 775.082(8)(d)(1)(b)-(c) (1998).[11] When the trial judge appeared inclined to deny the motion, trial counsel reminded him that the victim "was subpoenaed four times for deposition and failed to appear.  She was subpoenaed twice for trial and failed to appear at trial twice." *Id.* at 198-99.  The trial court ordered that Petitioner be taken into custody, but granted trial counsel's request for a continuance, advising him that a written statement from the victim would be acceptable for sentencing purposes. *Id.* at 199.

At the October 6, 1999 sentencing hearing, trial counsel informed the trial court that efforts to contact the victim were unsuccessful, stating, "one of the basis (sic) to come off the PRR is that the victim signed a statement, and that's what we're hoping to give. Another basis is if the material witness cannot be found – cannot be located – the victim wasn't found for four depositions.  She was subpoenaed and refused to come, two [sic] trial dates, and we were hoping to use her as a witness in sentencing and we can't find her" (Dkt. 25, Ex. 002 at R. 149-50). When asked if there was any legal cause why sentencing could not go forward, trial counsel responded "No, Judge, there is not."  Trial counsel, however, took advantage of the opportunity to speak before imposition of sentence to say that "[o]ther than I think it would — I mean, it doesn't force you to come off the 15 years, but I think you're allowed to." *Id.* at R. 150. When the State was unable to produce an affidavit

---

[11]"It is the intent of the Legislature that offenders previously released from prison who meet the criteria in paragraph (a) be punished to the fullest extent of the law and as provided in this subsection, unless any of the following circumstances exist: . . . (b) [t]he testimony of a material witness cannot be obtained; (c) [t]he victim does not want the offender to receive the mandatory prison sentence and provides a written statement to that effect; or (d) [o]ther extenuating circumstances exist which preclude the just prosecution of the offender."  Fla. Stat. § 775.082(8)(d)(1)(b)-(d) (1998).

verifying that Petitioner qualified for sentencing under the PRRPA, the trial court reset sentencing for the following week, acknowledging that the delay would work to Petitioner's advantage because trial counsel would have additional time in which to locate the victim. *Id.* at R. 151-52.

When the October 13, 1999 sentencing hearing commenced, trial counsel advised the trial court that efforts to locate the victim continued to be unsuccessful. The State argued that given testimony regarding Petitioner's "efforts to intimidate or dissuade the victim from coming to court and testifying" and his criminal history, he should receive the minimum mandatory sentence under the PRRPA. *Id.* at R. 158. The trial court determined that it was "duty bound" to imposed a 15-year sentence under the PRRPA. *Id.* at R. 160.

The record supports the trial court's rejection of this claim.  Trial counsel is not ineffective for failing to prevail on an argument. *Chandler*, *supra*, at 1314. Petitioner has not demonstrated that the trial court's rejection of this claim is contrary to or an unreasonable application of *Strickland*'s two-prong test.  The claim is, therefore, without merit.

**Appellate Counsel**

In Grounds Twenty-Six and Twenty-Seven, Petitioner asserts that he was denied effective assistance of counsel on direct appeal.[12]  Specifically, Petitioner asserts that:

---

[12]Appellate counsel asserted that the trial court erred in: (1) failing to hold an adequate *Nelson* hearing after Petitioner moved to dismiss court appointed counsel on grounds of incompetency; (2) failing to conduct an adequate *Faretta* hearing; (3) denying the defense motion in limine to preclude lay testimony regarding the victim's pregnancy; (4) imposing sentence pursuant to the PRRPA, which violates the separation of powers provision in the Florida constitutional; (5) allowing the State to proffer unfairly prejudicial questions to prospective jurors during voir dire; (6) failing to allow impeachment of a State witness with a felony conviction where adjudication had been withheld; (7) prohibiting the defense from impeaching a State witness through the use of statements in a police report; and (8) failing to give a special jury instruction advising the jurors that if convicted, Petitioner would be sentenced to serve a mandatory term of 15 years under the PRRPA (Dkt. 25, Ex. 003 at 7-9).

26. [A]ppellate counsel was ineffective by denying Petitioner his Sixth Amendment rights under the confrontation clause, and due process of law, by failing to raise on direct appeal an argument based on sufficiency of the evidence because of the victim's failure to appear and testify at trial; and

27. Appellate counsel was ineffective for not arguing legal sufficiency of circumstantial evidence to convict.

*Id.* According to Petitioner these two issues were raised in an application for state habeas relief filed May 24, 2002. While Respondent is unable to verify that these are the claims raised in the habeas petition because Petitioner failed to serve the State and the appellate court file was destroyed after it became contaminated with asbestos, Respondent accepts Petitioner's statement that these two claims are exhausted in the state courts. *See Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992) ("[A] district court should not place the burden on a habeas petitioner to prove what he alleged in his state court motion for post-conviction relief when the state court loses the motion through no fault of the petitioner."). The state district court denied Petitioner's request for state habeas relief on June 28, 2002. *See Crumbley v. State*, 823 So.2d 774 (Fla. 2d DCA 2002) (table decision). As stated above, although the state district court denied the petition without written opinion, the Eleventh Circuit has held that the decision is entitled to the same deference as if it had entered written findings to support its decision. *See Wright*, 278 F.3d at 1255.

To prevail on this claim, Petitioner must first show that appellate counsel was objectively unreasonable in not raising the omitted issue. *Smith v. Robbins*, 528 U.S. 259 (2000). However, appellate counsel who files a merits brief need not raise every nonfrivolous claim. *Jones v. Barnes*, 463 U.S. at 754. The exercise of judgment involved in framing an appeal makes it "difficult to demonstrate that [appellate] counsel was incompetent" under Strickland for omitting a particular argument. *Smith v. Robbins*, 528 U.S. at 285-86 (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only

when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")). To demonstrate prejudice, Petitioner must establish a reasonable probability that, but for appellate counsel's alleged error, he would have prevailed on appeal. *Id.* at 286. Petitioner must satisfy both prongs of the Strickland test in order to prevail on his claim of ineffective assistance of appellate counsel. *Id.* at 289.

**Ground Twenty-Six**

Petitioner contends that appellate counsel was ineffective for failing to assert that Petitioner was denied the right to confront his accuser when the victim failed to appear to testify. The record reflects that efforts by the State to subpoena the victim were unsuccessful, and trial counsel was likewise unable to locate her.

In his reply, Petitioner cites the Supreme Court's holding in *Crawford v. Washington*, 541 U.S. 36 (2004) (announcing a new test for determining whether the admission of out-of-court testimonial statements violates a defendant's Sixth Amendment right to confrontation, the Court held that a testimonial hearsay statement cannot be admitted at trial unless the proponent establishes (1) that the declarant was unavailable to testify, and (2) that the defendant had a prior opportunity to cross-examine the declarant about his or her statements in support of his claim)). Under controlling case law, Petitioner reliance on *Crawford* fails for two reasons. First, the *Crawford* decision does not apply retroactively to cases on collateral review. *See Whorton v. Bockting*, __ U.S. __, 2007 WL 597530 (Feb. 28, 2007); Espy *v. Massac*, 443 F.3d 1362, 1367 (11th Cir. 2006).

Second, assuming for the purpose of analysis that *Crawford* were retroactive, other than the statements made by the victim to the 911 operator, which Petitioner submitted into

evidence in support of his defense,[13] no statement by the victim was admitted at trial. *Crawford* is, therefore, irrelevant to this case. Having failed to demonstrate that the absence of the victim at trial resulted in a violation of the Confrontation Clause, Petitioner has not shown that appellate counsel was ineffective for failing to raise this issue on direct appeal. The state court's rejection of this claim is objectively reasonable. Petitioner has failed to demonstrate that he meets the criteria for § 2254 relief.

**Ground Twenty-Seven**

        In his final claim of ineffective assistance of counsel, Petitioner contends that appellate counsel erred in failing to challenge the sufficiency of the evidence to support his conviction.  Specifically, Petitioner contends that his conviction was improperly grounded on circumstantial evidence. It is well settled under Florida law that a criminal offense may be proven by circumstantial evidence. Where the evidence against the defendant is circumstantial, the Florida Supreme Court has set the following standard:

> [I]f the state does not offer evidence which is inconsistent with the defendant's hypothesis, "the evidence [would be] such that no view which the jury may lawfully take of it favorable to the [state] can be sustained under the law." 293 So.2d at 45. The state's evidence would be as a matter of law "insufficient to warrant a conviction." Fla.R.Crim.P. 3.380.

> It is the trial judge's proper task to review the evidence to determine the presence or absence of competent evidence from which the jury could infer guilt to the exclusion of all other inferences. That view of the evidence must be taken in the light most favorable to the state. *Spinkellink v. State,* 313 So.2d 666, 670 (Fla.1975), *cert. denied*, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976). The state is not required to "rebut conclusively every possible variation" of events which could be inferred from the evidence, but

---

[13]Under Florida law, "[a] party may not invite error and then be heard to complain of that error on appeal." *Cox v. State*,  819 So.2d 705, 715 (Fla. 2002) (quoting *Pope v. State*, 441 So.2d 1073, 1076 (Fla. 1983). The invited error doctrine is also applied in federal courts.  *See United States v. Harris*, 443 F.3d 822, 823-24 (11th Cir. 2006) ("The doctrine of invited error is implicated when a party induces or invites the district court into making an error;" where a party invites error, the court is precluded from reviewing that error (quotations and citations omitted).

only to introduce competent evidence which is inconsistent with the defendant's theory of events. *See Toole v. State*, 472 So.2d 1174, 1176 (Fla.1985). Once that threshold burden is met, it becomes the jury's duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt.

*State v. Law*, 559 So.2d 187, 188-89 (Fla. 1989) (footnotes omitted).

In this case, Petitioner was convicted of aggravated battery upon a pregnant victim, a second degree felony punishable by 15 years imprisonment under the PRRPA. *See* Fla. Stat. § 775.082(8)(a)(2)(c); § 784.045(1)(b). A simple battery "occurs when a person . . . (1) [a]ctually and intentionally touches or strikes another person against the will of the other; or (2) [i]ntentionally causes bodily harm to another person." Fla. Stat. § 784.03(1)(a) (1998). An aggravated battery is defined under Florida law as follows:

[A] person commits aggravated battery if the person who was the victim of the battery was pregnant at the time of the offense and the offender new or should have known that the victim was pregnant.

Fla. Stat. § 784.045(1)(b) (1998).  Having reviewed the record, the Court concludes that the evidence advanced at trial was sufficient to allow the case to go to the jury.

Two eyewitnesses, Betty and Elizabeth Smith,  testified for the State. The offense of conviction occurred in the living room of Betty Smith's home. Both witnesses testified based on their personal observations of changes in the victim's body that, in their opinion, she was pregnant. The State adduced testimony from Elizabeth Smith that when Petitioner approached her and the victim on the street on March 22, 1999, she heard Petitioner ask to "feel the [victim's] baby" and offer to take care of the baby when it was born in exchange for sexual favors.

According to the witnesses' testimony, Petitioner poured some crack cocaine from a vial into his hand and raised it toward the victim's face.  The victim pushed his hand away

from her face and pieces of crack cocaine fell to the floor.  The witnesses further testified that it was then that Petitioner struck the victim in the face.  According to the witnesses, for three days following the incident the victim had a red mark on her face where she was hit and complained of pain associated with the blow.

The theory of Petitioner's defense was that Betty and Elizabeth Smith attempted to "blackmail" him into providing them drugs, threatening that if he did not do so, they would call the police and report that Petitioner "slapped" a pregnant woman. During cross-examination of Elizabeth Smith, Petitioner asserted that when he showed the victim pieces of the crack cocaine he purchased for Betty Smith, the victim tried to grab the drugs out of his hand.  Petitioner further contended that the victim "grabbed" him and while the Smiths were "tussling" him, the victim "ran into" his body.  *See* Dkt. 25, Ex. 002, Vol. II at 126. Petitioner introduced a copy of the recording of the victim's call to 911 into evidence.

Given the Florida Supreme Court's holding that the State only had "to introduce competent evidence which is inconsistent with the defendant's theory of events," *State v. Law*, 559 So.2d at 188-89, appellate counsel's failure to challenge the jury's finding of guilt as improperly grounded on circumstantial evidence did not constitute ineffective assistance of counsel.  Appellate counsel is not ineffective for failing to raise on direct appeal an issue with little or no chance of success.

Applying the standards required by § 2254(d), the Court determines that Petitioner has not demonstrated that the adjudication of this claim resulted in a decision that is contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on

an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  This claim is, therefore, without merit.

**Jurisdiction**

In  Ground Twenty-Eight, Petitioner asserts that the trial court lacked jurisdiction to try him because the State failed to produce as evidence (1) a police report containing the victim's statement and (2) the victim's testimony regarding the battery.  According to Petitioner, the "State's failure to use [the] police report as evidence, coupled with the fact that the victim herself never testified at trial, rendered Petitioner's conviction infirm, and it is on this basis that Petitioner claims that the trial court had no jurisdiction to hear, try, or sentence him." Petitioner raised this claim in an application for state habeas relief in the trial court.  In rejecting the claim, the trial court found as follows:

> The Defendant was found guilty by a jury verdict on September 29, 1999, of aggravated battery on a pregnant woman and sentenced on October 13, 1999, to fifteen years imprisonment as a prison releasee reoffender.  The judgment and sentence were affirmed on appeal on December 13, 2000. *See Crumbley v. State*, 783 So.2d 257 (Fla. 2d DCA 2000).  The Defendant alleges that the Court lacked jurisdiction to try and sentence him in the above styled case because there was no police report in evidence.  The Defendant cites no authority for his proposition and the Court is aware of none.  The court's review indicates that Defendant was properly tried within the circuit Court of the Sixth Judicial Circuit Court. . . . . Defendant's Petition is hereby DENIED.

Dkt. 31, Ex. D at 27.  The state appellate court affirmed the trial court's decision on February 4, 2004.  *See Crumbley v. State*, 873 So.2d 330 (Fla. 2d DCA 2004) (table decision).

Under Florida's constitution, the decision to charge and prosecute is an executive responsibility, and the state attorney has complete discretion in deciding whether and how to prosecute.  *See* Fla. Const. art. II, § 3; *State v. Bloom*, 497 So.2d 2, 3 (Fla. 1986). *See*

*also Bordenkircher v. Hayes*, 434 U.S. 357, 368 (1978) (holding that "[i]n our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion"); *United States v. Crespedes*, 151 F.3d 1329, 1332 (11th Cir. 1998), *cert. denied*, 525 U.S. 1086 (1999). Prosecuting Petitioner on the aggravated battery charge was within the discretion of the state attorney, a matter over which the trial court has no control. *State v. Bloom*, *supra*, at 3.

Under Florida's judicial scheme, the circuit courts have exclusive original jurisdiction over all felonies. Fla. Const. art. V, § 5(b); Fla. Stat. § 26.012(2)(d) (1998). Since the information charged Petitioner with having committed an aggravated battery, a second-degree felony under Florida law, and the incident giving rise to the charge occurred in St. Petersburg, which is located in Pinellas County, Florida, the Sixth Judicial Circuit Court had jurisdiction over the case. Fla. Stat. § 26.021(6).

As to Petitioner's assertions regarding the evidence, or lack thereof, as discussed above, federal habeas proceedings "are not forums in which to relitigate state trials." *Barefoot v. Estelle,* 463 U.S. 880, 887 (1983). The writ of habeas corpus protects persons against "extreme malfunctions in the state criminal justice systems," *Jackson v. Virginia,* 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring in the judgment), an event which has not befallen Petitioner.

The Court finds that Petitioner has failed to establish that the trial court's adjudication of this claim was contrary to or an unreasonable application of clearly established Federal

law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d). This claim, therefore, lacks merit.

## Conclusion

For reasons set forth above, the Court finds that Petitioner has failed to establish that he is entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1.    Petitioner's original Petition for Writ of Habeas Corpus (Dkt. 1) and Amended Petition for Writ of Habeas Corpus (Dkt. 13), having been superseded[14] by the Second Amended Habeas Corpus Petition, are **DENIED** as moot.

2.    The Second Amended Petition for Writ of Habeas Corpus (Dkt. 21) is **DENIED** with prejudice.

3.    The Clerk is directed to enter judgment against Petitioner, terminate all pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on March 13, 2007.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copy furnished to:
All Parties of Record

SA:jsh

---

[14]*See, e.g., Fritz v. Standard Life Ins. Co.*, 676 F.2d 1356, 1358 (11th Cir. 1982) (finding that an amended complaint under the federal rules supercedes the original complaint).